IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**JOSEPH GREGORY LASTER,**

    **Plaintiff,**

vs.                                                Case No. 5:05cv57-RH/WCS

**R. SMITH, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, has filed a second amended civil rights complaint. Doc. 14. Plaintiff also filed a "notice of filing," doc. 15, which appears intended to demonstrate exhaustion under 42 U.S.C. § 1997e. Additionally, Plaintiff filed a document titled, "Plaintiff's compliance with court order." Doc. 16.

Plaintiff was previously directed to demonstrate that he exhausted administrative remedies prior to filing this case. Docs. 8, 11. Plaintiff's responses, docs. 14-16, have now been considered along with the grievances he has submitted thus far in this case. Doc. 1, attachments; doc. 7, attachments; doc. 14, attachments; doc. 16.

Plaintiff's allegations concern the lack of medical care he has received after he injured his left hand on September 2, 2004.  Doc. 14.  Plaintiff's problems with his hand appear to be on-going.  *Id.*

Plaintiff first sent an inmate request to Nurse Mitchell (this is not a "grievance" for exhaustion purposes),[1] on October 1, 2004, complaining about the pain in his left hand and saying that his hand not yet been x-rayed.  Doc. 14, attachment.  Plaintiff also complained about having a top bunk and being in pain having to use his hand to get up onto the bunk.  *Id.*  The October 4, 2004, response advised that Plaintiff was on the call-out list for an x-ray and he should watch for his name.  *Id.*

Plaintiff submitted a formal grievance[2] concerning the lack of treatment for his hand on or about October 15, 2004.  Doc. 1, p. 15; doc. 14, attachment.  Plaintiff dated the grievance on October 15th, but the document was not stamped as received in the Assistant Warden's office until October 20, 2004.  Doc. 14, attachment.  Plaintiff's grievance was denied on November 12, 2004, stating that Plaintiff had "been seen by Mr. Hughes" and adding that Plaintiff's "hand was x-rayed and the fracture was noted."  Doc. 1, pp. 15-16; doc. 14, attachment; doc. 16, p. 6.  This date of denial is on the twenty-third day after receipt which is beyond the twenty days within which a response

---

[1] The administrative rules of the Department state that "[t]he act of asking questions or seeking information, guidance, or assistance is not considered to be a grievance.  Answers to inmates requests of this nature shall not be considered as documentation of having met the informal step . . . ."  FLA. ADMIN. CODE R. 33-103.005(1)(2)(b)1.

[2] Informal grievances are not required for medical grievances.  FLA. ADMIN. CODE R. 33-103.005(1); Rule 33-103.006(2)(h).

Case No. 5:05cv57-RH/WCS

is to "be provided to the inmate" as required by FLA. ADMIN. CODE R. 33-103.006(6); *see also* Rule 33-103.011(3)(b).

Prior to Plaintiff receiving the response, he sent an emergency grievance to the Office of the Secretary on October 29, 2004. Doc. 1, p. 17; doc. 14, attachment. It was "not accepted as a grievance of an emergency nature by Health Services, Central Office, Tallahassee" and was "returned without action" on November 5, 2004. *Id.*

Plaintiff did not file any further grievances with prison officials until March of 2005. Doc. 14, attachment. At that point, he filed an informal grievance to medical on March 15, 2005, which was denied on March 25, 2005. *Id.*[3] Plaintiff then submitted a formal grievance to the Warden on March 16, 2005, in which Plaintiff wrote that he was "not waiting for the informal grievance to come back because [he had] been in pain long enough." Doc. 7, attachment. Plaintiff explained that his doctors had told him his hand was fractured and he complained that his knuckle was "knocked back beyond the little and middle knuckle." *Id.* Plaintiff reported that he has been in pain for months and disagreed with Doctor Hughes' statement that no specialist could put the knuckle back in place. *Id.* Plaintiff asked for assistance "in seeing a bone specialist" and complained of pain when trying to get out of his bunk. *Id.* The grievance was stamped as having been received in the "Asst. Warden's Office" on March 22, 2005, and was denied on April 11, 2005. *Id.* Twenty-six days passed between the time signed the grievance and presumably sent it to the Warden (March 16th) and when a response was completed (April 11th). That exceeds the 20-day time limit as provided in the Rules. However, the

---

[3] Inmates are not required to submit informal grievance for medical issues. FLA. ADMIN. CODE R. 33-103.006(3)(e).

grievance was not stamped as received in the Warden's office until March 22nd.  It is unknown why a formal grievance would take six days to be received in the Warden's office at the institution where Plaintiff was housed, but even if that date is accepted, then it is noted that the grievance was answered or responded to on the twentieth day, April 11th, although it was not returned to Plaintiff until April 12th, which would be the twenty-first day.  *See* doc. 14, attachment (grievance appeal responded to on April 20, 2005).  The Department's rules state that "a response shall be provided to the inmates within 20 calendar days of receipt of the grievance . . . .."  FLA. ADMIN. CODE R. 33-006(6); *see also* Rule 33-103.011(3)(b).  The grievance was not responded to in a timely fashion by the Department.

Plaintiff filed another formal grievance on April 5, 2005, in which he presented the identical facts as he related in the March 16th grievance.  This time, the grievance was approved on April 21, 2005, "for a follow up visit."  *Id.*

Finally, Plaintiff once again attempted to submit an emergency grievance to the Secretary's office in April, 2005, and complained that he was bypassing the formal grievance level because of a "major concern of his on going injury dating back [to] 9-2-04."  Doc. 14, attachment.  Plaintiff explained that he had filed a formal grievance to the Warden but said that it had not "been answered within 25 days from 3-16-05 . . ." and for that reason also, he was bypassing the institution level of the grievance process.  *Id.*  The grievance was stamped received on April 15, 2005, which was a month from when Plaintiff asserts he sent the formal grievance to the Warden (March 16th grievance).  As noted above, the Department's rules require a response to a formal grievance "within 20 calendar days of receipt of the grievance as required by paragraph 33-103.011(3)(b),

F.A.C." Fla. Admin. Code R. 33-103.006(6).[4]  Similar to the first "emergency" grievance appeal Plaintiff submitted to Central Office, it was "not accepted as a grievance of an emergency nature." *Id.*  Nevertheless, the response noted that Plaintiff's formal grievance had already been responded to on April 11th and returned to Plaintiff on April 12th, and reported that his second grievance (submitted on April 5th) was still "under review" (this is the grievance ultimately "approved" and responded to on April 21st).  *Id.*

**Analysis**

The Prison Litigation Reform Act as set forth in 42 U.S.C. § 1997e(a) provides: "*No action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added.)  The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens.  Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (holding that an excessive force claim is subject to the exhaustion requirement).  Even where an inmate

---

[4] Rule 33-103.011(4) permits an inmate to proceed to the next step of the grievance process when a time limit for receiving a response has expired.

seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).

A prisoner must, however, comply with the process set forth and established by the grievance procedures.  See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of his grievance.  See Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown").  Failure to exhaust available administrative remedies is the functional equivalent of failing to state a claim, and thus should be counted as a strike under 28 U.S.C. § 1915(g).  See Rivera v. Allin, 144 F.3d 719, 731 (11th Cir.), cert. denied 524 U.S. 978 (1998) (stating that "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").  "Accordingly, we join other circuits in concluding that under section 1915(g), federal courts may properly count as strikes lawsuits or appeals dismissed as frivolous, malicious or failing to state a claim upon which relief may be granted prior to April 26, 1996."  Rivera, 144 F.3d at 730(citations omitted).

Plaintiff initially submitted a formal grievance to prison officials near the time of the injury, but Plaintiff did not appeal the denial of that grievance.  Therefore, his claims are not exhausted from those efforts.  When Plaintiff again attempted to submit a formal appeal a few months later, in March, these efforts came too late for this case.  Plaintiff

initiated this lawsuit on March 21, 2005, when this complaint was received by the Clerk's office. The statute requires exhaustion before a case is "brought." 42 U.S.C. § 1997e(a). Even considering the grievances in the most liberal reading possible, there was one formal grievances which was granted and, by implication, Plaintiff would not necessarily have been required to continue in the grievance process after having it accepted. However, the grievance was approved *after* Plaintiff initiated this case. Additionally, the allegations in that grievance do not seem to encompass all the things about which Plaintiff complains in this lawsuit; *i.e.*, delay in seeing a doctor, delay in having x-rays, lack of pain medication, and the like. Because his efforts at exhaustion have come after the case was "brought" to the Court, Plaintiff's claims are unexhausted and barred by 42 U.S.C. § 1997e(a).

It is acknowledged that Plaintiff has finally submitted grievance appeals to the Office of the Secretary in an effort to comply with the last step of the grievance process. But those efforts have not yet been done correctly. As noted above, there were problems with the delay in responding to Plaintiff's formal grievances; but Plaintiff did not exclusively rely on that delay to submit his grievance appeal to Central office. Instead, Plaintiff filed his appeal asserting that it was an "emergency." It was not accepted as such and, so, Plaintiff has not exhausted administrative remedies because he has not filed a grievance appeal to Central Office in compliance with the Rules.

There are four reasons for requiring the exhaustion of administrative remedies: "1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency

procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error." N.B. by D.G. v. Alachua County School Bd., 84 F.3d 1376, 1378-9 (11th Cir. 1996)(citation omitted)(adopting and attaching as an appendix the dispositive order of then District Court Chief Judge Paul of the Northern District of Florida). This Court will be better able to address Plaintiff's claims when the appropriate administrative process is completed and those records are available for review. Furthermore, it is possible that should Plaintiff pursue the grievance process, presenting all issues involved with his medical care to this point, that the agency will provide Plaintiff with a solution acceptable to him that will preclude the necessity of filing another lawsuit.

Plaintiff appears to acknowledge that his civil rights complaint was filed "with this Court before exhaustion under 42 U.S.C. § 1997e." Doc. 16. The Court must agree with Plaintiff's own assessment.

Because Plaintiff has not yet exhausted his administrative remedies, and because the Court is not permitted to stay a case while a prisoner completes the exhaustion requirement, Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997); *see also* McCoy v. Goord, 255 F.Supp.2d 233, 254 (S.D.N.Y. 2003), this case must be dismissed without prejudice.

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's second amended complaint, doc. 14, be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting

this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on August 5, 2005.

      s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**